NO. 07-02-0205-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 10, 2002



______________________________




LUPE MANUEL MEDELLIN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 64TH DISTRICT COURT OF SWISHER COUNTY;



NO. A3673-0201; HONORABLE JACK R. MILLER, JUDGE



_______________________________




DISMISSAL



Before REAVIS and JOHNSON, JJ. and BOYD, S.J. (1)


 Pursuant to a plea of guilty, appellant Lupe Manuel Medellin was convicted of
indecency with a child and punishment was assessed at ten years confinement. Although
represented by appointed counsel at trial, counsel corresponded with appellant notifying
him that pursuant to his guilty plea, he could only appeal with permission of the trial court
and suggested that he file a pro se notice of appeal. Appellant, proceeding pro se, timely
perfected his appeal. However, after the appellate record was filed and the deadline
lapsed for filing a brief, appellant was notified of the defect but did not respond. On
August 20, 2002, the appeal was abated and the cause remanded to the trial court
pursuant to Rule 38.8(b)(2) and (3) of the Texas Rules of Appellate Procedure to
determine whether appellant desired to prosecute the appeal and whether he was indigent
and entitled to appointed counsel.

 The trial court issued a bench warrant to have appellant transported from the Ware
Unit at Colorado City, Texas to the Swisher County Jail for purposes of the abatement
hearing. On September 12, 2002, as directed by this Court, the trial court conducted a
hearing and appellant testified as follows: 

 Q. And it is my understanding that after thinking about it and thinking about
the range of punishment and everything, it is now your desire not to file any
type of appeal; to withdraw your request of appeal from the Court of Appeals
and to go ahead and go on [sic] serve your 10 year sentence; is that correct?

 A. Yes, sir. 

 Q. And has anybody forced you into doing this, coerced you, or promised
you anything to do this?

 A. No, sir.

 Q. Are you doing this of your own free will and accord?

 A. Yes. 

 Q. So are you requesting that the Judge enter an order saying that you are
withdrawing your pro se appeal; and also, you understand that you will be
immediately placed back in the Texas Department of Criminal Justice?

 A. Yes, sir. 

 Q. Do you have anything else that you want to tell the Judge?

 A. No, sir. 


Following his testimony, the trial court announced its finding that appellant:

 is now withdrawing, officially, his notice of appeal and we'll be preparing a
transcript of this hearing and he will be remanded to the custody of the TDC
to serve out the remainder of his sentence. 


On September 25, 2002, the trial court signed written findings of fact and conclusions of
law, finding, among other things: 

 appellant had the opportunity to discuss with his attorney the
ramifications and consequences of a successful appeal;
 appellant does not wish to pursue his appeal;
 appellant desired to withdraw his Notice of Appeal and serve his ten-
year sentence; and
 appellant freely and voluntarily, without coercion or promises, made
the decision to not pursue an appeal.



 After the trial court held a hearing and made its findings, appellant wrote letters to
the trial court indicating he had withdrawn his notice of appeal due to pressure and had
changed his mind and wished to pursue the appeal. A similar letter was filed with the
Clerk of this Court in which he asserted he was not withdrawing his appeal. The State filed
a response urging that we not consider the letters because they were not evidence
resulting from the abatement hearing.

 In Smith v. State, 858 S.W.2d 609, 611 (Tex.App.-Amarillo 1993, pet. ref'd), we
held that a defendant may waive the right to appeal and that a knowing and intelligent
waiver of the right to appeal will prevent a defendant from appealing without the consent
of the trial court. See also Perez v. State, 989 S.W.2d 427, 428 (Tex.App.-Dallas 1999, 
no pet.). The record of the abatement hearing supports appellant's knowing and intelligent
withdrawal of his notice of appeal and does not show any coercion. Accordingly, pursuant
to the trial court's findings of fact and conclusions of law, which we may not disregard if
supported by the record, the appeal is dismissed.


 Don H. Reavis

 Justice

 


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.



description of insurer practices and the effect of different credit
models, presented in a manner that protects the identity of individual insurers
and consumers[.]
          To prepare the report, TDI sent letters requesting data from some insurers. TDI later
received a request under the Public Information Act (PIA), asking for copies of its
correspondence to the insurers regarding the report. TDI resisted the request, taking the
position that release of the correspondence would conflict with the requirement of § 15(b)
that the identity of individual insurers be protected. Thus, TDI reasoned, the identities of
the insurers was information “confidential by law,” excepted from disclosure under §
552.101 of the PIA. Tex. Gov’t Code Ann. § 552.101 (Vernon 2004). It withheld the
correspondence and, in accordance with the PIA, requested a decision from the Attorney
General. Tex. Gov’t Code Ann. § 552.301 (Vernon 2007). In its written comments to the
Attorney General, TDI explained that § 15(b) requires its report must protect the identity of
the individual insurers and because each of its letters was addressed to a specific insurer,
the letters and related attachments, also tailored to each insurer, would disclose the identity
of the insurers in violation of the statute.


 Thus, TDI contended, to protect the identity of the
insurers, the letters should be released only in redacted form and the attachments should
be withheld in their entirety.
          The Attorney General ruled that the withheld information was subject to release
under the PIA because “article 21.49-2U of the Insurance Code specifically addresses the
confidentiality of insurers’ identities found in the credit scoring report itself, and not the
identities found in any information related to the credit scoring report.” See Tex. Atty’s Gen.
OR2004-7453. On receiving the Attorney General’s ruling, the Associations, on behalf of
their member insurers, filed suit against TDI and the Attorney General under the Uniform
Declaratory Judgments Act and the PIA, challenging the ruling and seeking a declaration
as to the proper interpretation of the Insurance Code provision.
          The Associations and the defendants each filed motions for summary judgment. The
Associations argued the position TDI had taken before the Attorney General, contending
TDI’s correspondence to the insurers should be considered confidential by law because of
§ 15(b), and contended the Attorney General was wrong to find the protection to the
insurer’s identities under § 15(b) was limited to the report itself. The Attorney General’s
contentions mirrored his open records ruling. 
          The trial court entered a final judgment that split the baby. It held the “names and
addresses of the insurers that appear on the letters and attachments, including names of
employees of insurers, acronyms of insurer names and name-identifying insurer slogans”
are made confidential by § 15 and therefore excepted from disclosure by PIA § 552.101. 
It found the remainder of the information, “consisting of letters from the Texas Department
of Insurance, with attachments, (with names and addresses redacted)” not excepted from
disclosure. The trial court also concluded that the Associations were not entitled to relief
under the Uniform Declaratory Judgments Act. Only the Associations filed a notice of
appeal.Analysis
Public Information Act
          The pertinent provision of the PIA, encompassed in § 552.101 of the Government
Code, excepts from disclosure “information considered to be confidential by law, either
constitutional, statutory, or by judicial decision.” The PIA is to be liberally construed in favor
of granting requests for information. Tex. Gov’t Code Ann. § 552.001(b) (Vernon 2004). 
Exceptions to the PIA are narrowly construed. Thomas v. Cornyn, 71 S.W.3d 473, 481
(Tex.App.–Austin 2002, no pet.); Arlington Indep. Sch. Dist. v. Texas Attorney Gen., 37
S.W.3d 152, 157 (Tex.App.–Austin 2001, no pet.). 
          In its ruling to TDI, the Attorney General opined on whether the disclosure of the
information withheld by TDI was required under the PIA. The opinion focused on whether
the information was considered “confidential by law” as set forth in § 552.101. There is no
dispute that the documents in question fall within the PIA’s definition of “public information”
and are subject to disclosure unless an exception applies. The Attorney General concluded
that the exception set forth in Texas Insurance Code article 21.49-2U § 15 did not extend
to any information other than the credit scoring report itself and thus, TDI was required to
disclose the information requested. We agree.
Statutory Construction
          The matter is one of statutory construction. Statutory construction is a question of
law and we review the trial court’s action de novo. Johnson v. City of Fort Worth, 774
S.W.2d 653, 656 (Tex. 1989). The primary goal in statutory construction is to ascertain and
give effect to the legislature’s intent. Tex. Gov’t Code Ann. § 311.023 (Vernon 2005). 
          In making this determination, we look first to the plain and common meaning of the
language of the statute. Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
865 (Tex. 1999). We must read the statute as a whole and not just isolated portions. Tex.
Dep’t of Transp v. City of Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004). If the meaning
of the statutory language is unambiguous, we must interpret it according to its terms, giving
meaning to the language consistent with other provisions in the statute. Id. We read every
word as if it were deliberately chosen and presume that omitted words were excluded
purposefully. Cornyn v. Universe Life Ins. Co., 988 S.W.2d 376, 379 (Tex.App.–Austin
1999, pet. denied). We also consider the objective the law seeks to obtain and the
consequences of a particular construction. City of Sunset Valley, 146 S.W.3d at 642.      Here, § 15 specifically states that “The report required under this section must
include: (1) a summary statement...presented in a manner that protects the identity of
individual insurers and consumers[.]” Tex. Ins. Code Ann. art. 21.49-2U, § 15. (emphasis
added). The plain language of the statute refers only to the report itself, not information
obtained by TDI for its use in preparation of the report.


 The Associations argue that
reliance on the plain language of the statute leads to an absurd result. We disagree. We
see no absurdity in the legislature’s choice in § 15 to treat the information contained in the
widely-disseminated report


 required by that section in a manner different from data
obtained or held by TDI. We presume that the legislature’s words accurately reflect its
intentions, and conclude the identity protection required by § 15 extends only to information
presented in the report. Our conclusion requires a finding the trial court did not err in
determining that the letters from TDI, with attachments (names and addresses redacted),
are not excepted from disclosure under § 552.101. We overrule the Associations’ first point
of error. 
Relief Pursuant to Uniform Declaratory Judgments Act
          By their second issue, the Associations contend the trial court erred in its
determination that the Uniform Declaratory Judgments Act was not a “proper basis for
review of this action,” and the PIA did not permit the Associations to seek an award of
attorney’s fees. We will overrule the issue.
 
          On appeal, the Associations seek to distinguish their suit challenging an open
records decision of the Attorney General and seeking the withholding of information from
other such suits. Citing Texas Education Agency v. Leeper, 893 S.W.2d 432 (Tex. 1994),
they assert that relief was authorized under the Declaratory Judgments Act because the
Attorney General’s opinion exceeded his statutory authority by interpreting the Insurance
Code in a manner to permit TDI to disclose the identities of insurers. The argument is
unpersuasive. TDI’s basis for withholding the letters and attachments was that they were
made confidential by § 15(b) and thus excepted from disclosure by § 552.101. It was
necessary for the Attorney General to assess the effect of § 15(b) to render the decision
required of him. See Tex. Gov’t Code Ann. § 552.306 (Vernon 2007) (requiring rendition
of Attorney General’s decision). The issue before the Attorney General, and before the trial
court, was like that in other open records cases: whether the information was shown to be
excepted from disclosure. We find no error in the trial court’s determination that the
Associations were not entitled to attorney’s fees. See also Tex. Gov’t Code Ann. § 552.323
(Vernon 1999) (providing for award of attorney’s fees in actions brought under some PIA
provisions). 
 
          Having overruled the Associations’ issues, we affirm the trial court’s judgment.
 
James T. Campbell
Justice